**UNITED STATES of America**

v.

**Vincent John SOVIERO a/k/a James Colde, Defendant.**

**Nos. 71 Cr. 808, 71 Cr. 907.**

United States District Court,
S. D. New York.

Sept. 6, 1972.

Whitney North Seymour, Jr., U. S. Atty., by Arthur J. Viviani, Asst. U. S. Atty., New York City, for plaintiff.

Herald Price Fahringer, Jr., Buffalo, N. Y., Theodore Rosenberg, Brooklyn, N. Y., of counsel, for defendant.

MOTLEY, District Judge.

### Memorandum Opinion on Motion to Suppress

Defendant Vincent John Soviero was indicted on February 26, 1965 and charged, along with four co-defendants, with three counts of violating the federal narcotics laws. Title 21, United States Code, Sections 173, 174; Title 26, United States Code, Sections 4705(a), 7237(b). A bench warrant was issued for Soviero's arrest on the same date. On July 12, 1971, more than six years later, he was arrested pursuant to the bench warrant and entered a plea of not guilty the following day.

He was next indicted on July 27, 1971 for possession of marihuana with intent to distribute in violation of Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(B). The defendant entered a plea of not guilty on July 28, 1971.

The third indictment was filed on July 27, 1971 and charges Soviero with offering a bribe to narcotics agents in violation of Title 18, United States Code, Section 201(b). The defendant entered a plea of not guilty on July 28, 1971.

The last indictment, filed on August 23, 1971, charges defendant in three counts with: 1) possession of chattels stolen from interstate commerce, Title 18, United States Code, Section 659; 2) possession of firearms by a convicted felon, Title 18, United States Code, Sections 922(h), 924(a), 921(a)(3); 3) possession of a firearm which had not been registered to him as required by Title 26, United States Code, Sections 5861(d), 5871, 5845(a). Defendant entered a plea of not guilty on September 7, 1971. Defendant is released on a total of $100,000 bail.

With respect to the second and fourth indictments, defendant moved to suppress the marihuana and the firearms on the grounds that: 1) there was no probable cause for the issuance of the search warrant which resulted in the seizure of the marihuana; 2) the first warrant being invalid, the second warrant which resulted in the seizure of the firearms was likewise invalid; and 3) there was an illegal entry into his apartment which resulted in the issuance of the first search warrant.

On March 17 and March 20, 1972, the court held a suppression hearing in this case to determine whether the two search warrants which issued on July 14, 1971 were invalid. The court finds that the warrants were the fruits of an illegal search and, hence, invalid.

As set forth above, defendant was arrested on July 12, 1971 pursuant to a bench warrant issued in February, 1965 on Indictment 65 Cr. 174. At the time of his arrest, defendant had upon his person a receipt for the payment of rent under the name of James Colde for an apartment at 80 Charles Street, New York, New York. After his arrest, Soviero was interviewed in the United States Attorney's office in the presence of Special Agent Thomas Devine and admitted he had used several aliases, including Colde, that he was last employed in 1965 and that his present address was 350 Bleeker Street, New York, New York.

Defendant was re-arrested on July 13 at about 8:15 P.M. on a charge of paying $5,000 to Devine and another narcotics agent. Defendant gave as one of the reasons for the payment his desire to avoid the pursuit of any investigative leads found on his person at the time of his arrest on July 12, 1971.

Incident to the arrest, Agent Devine testified that he searched defendant and obtained from him keys one of which he found fitted the door to the lobby of the 80 Charles Street building. Following the arrest Agent Devine and Agent Ronald J. Caffrey went to 80 Charles Street sometime before midnight. Devine testified that they entered the building, without using the keys, and attempted to speak to the tenants. He testified that they went to 350 Bleeker Street and back to Charles Street several times during the early morning of July 14. Devine testified and alleged in his affidavit for the first warrant that during the early morning daylight hours he could view from the sidewalk the ground floor apartment at 80 Charles Street. He alleged further that he observed a large stack of brown paper bags which, from his experience as a narcotics agent, were of the size and description "normally used in the packaging and selling of large quantities of narcotics." He also alleged to have observed what he believed to be boric acid "commonly used in [the] cutting and adulterating of narcotics."

Based primarily on these observations, Agent Devine proceeded to obtain a search warrant which was issued at approximately 10:40 A.M. on July 14, 1971 authorizing a search for narcotics, nar-

cotics paraphernalia, packaging equipment, money and customer records. The return on the first warrant included approximately ½ kilograms of marihuana, plastic bags, aluminum foil, glassine bags, measuring spoons, brown paper bags and a protective face mask.

A second warrant was issued on July 14, 1971 at approximately 3:20 P.M. based on an affidavit citing observations made during the search pursuant to the first warrant. The return on the second warrant included three Smith and Wesson pistols, one Burgo derringer, one .45 caliber pistol and a pistol silencer.

The court finds that agents illegally entered defendant's apartment at 80 Charles Street. Agent Devine stated, in his affidavit and testimony, that he observed the suspicious items contained in the 80 Charles Street apartment through a street level window whose shade was partially raised.

This assertion is most implausible. It seems incredible that if, as the government charges, a narcotics "factory" was being operated in the apartment, the occupant would have left his shade up so that passersby, including narcotics agents, could observe its contents.

The government's explanation that the shade may have been left up by a carpenter "unaware of the defendant's use of the apartment" is no more plausible. While the carpenter has signed an affidavit that he did remodeling work in the apartment on July 13, it is unlikely that operators of a narcotics plant would entrust remodeling of the "factory" premises to a carpenter who would not be discreet. The carpenter, moreover, did not state in his affidavit that he had left the shade raised. The carpenter was not called to testify because of illness and the government failed to take his deposition at the time of the hearing.[1]

Agent Devine's version of the events of July 13 was further undermined by the testimony of Mrs. Esilda Nieves, a resident of 84 Charles Street. Mrs. Nieves testified that on the night of July 13, 1971 she had been sitting in front of 80 and 82 Charles Street with her husband and another couple. She stated that she observed two strangers enter the lobby at 80 Charles Street and that approximately 15 or 20 minutes later she saw a light in Soviero's apartment go on. She also testified that she approached the window but could not see inside the apartment because the shade was drawn. She testified further that she could remember the events, after six months, because of the "commotion" on the next day when the agents removed articles from Soviero's apartment pursuant to the search warrants.

The government did not attempt to impeach Mrs. Nieves' testimony by calling the others who had been sitting with Mrs. Nieves on Charles Street that night.

The most probable explanation of how the agents made their observations was that they entered the apartment prior to obtaining the first warrant. Mrs. Nieves testified that she saw a light go on in Soviero's apartment 15 or 20 minutes after the two "strangers" had entered the apartment. Devine's affidavit and testimony revealed that he had obtained keys to the apartment from Soviero when he was re-arrested on July 13. He stated that he used one of these keys to open the lobby door on the morning of July 14. While he denied using the other keys to open Soviero's door, he had access to the apartment. Given Mrs. Nieves' testimony, the implausibility of Agent Devine's explanation of how he obtained information on the contents of Soviero's apartment, and the failure of the government to offer any plausible alternative explanations, the most likely conclusion is that the apartment was entered before a search warrant was obtained.

The Supreme Court has long held that "[t]he essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so ac-

1. The court allowed the government an opportunity after the hearing to take the carpenter's deposition but the deposition was never taken.

quired shall not be used before the Court but that it shall not be used at all." Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). See also Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), Nardone v. United States, 308 U.S. 338; 60 S.Ct. 266, 84 L.Ed. 307 (1939).

In United States v. Paroutian, 299 F.2d 486 (2d Cir. 1962), the United States Court of Appeals for the Second Circuit held that "[a]n unlawful search taints all evidence obtained at the search or through leads uncovered by the search." Only if the information which could have emerged from an unlawful search in fact stems from an independent source is the evidence admissible. The mere fact that the government had "sufficient independent information available so that in the normal course of events it might have discovered the questioned evidence without an illegal search cannot excuse the illegality." *Id.* at 489. Finally, once there is an illegal search and defendant has introduced "substantial" evidence showing that the items were discovered as a result of the illegal search, the burden shifts to the government "to prove that its evidence had an independent origin." *Id.*

 While the affidavit for the first search warrant was valid on its face, the court need not consider whether, but for the information gained through the illegal entry, the affidavit would still have provided probable cause. For even if the affidavit would have offered probable cause without the illegally obtained information, the government has not met its burden of showing that it still would have sought a search warrant. It may well be that reasonably prudent agents would likely have sought a search warrant based on the other information about Soviero which they possessed. Nevertheless, as the *Paroutian* court said, "The test must be one of actualities, not possibilities." *Id.*

Since the government has failed to offer any evidence whatsoever on the issue of taint, the court holds that discoveries made during the illegal search influenced Agent Devine's decision to seek a search warrant on July 14.

 The second warrant, since it was obtained pursuant to an affidavit which cited observations made during the search under the first warrant, is also invalid as the fruit of an illegal search under *Paroutian*.

Defendant Soviero's motion to suppress the evidence seized pursuant to the two search warrants is accordingly granted.

So ordered.