130 N.J. Super. 585 (1974)
328 A.2d 35
STATE OF NEW JERSEY, PLAINTIFF,
v.
ANGELO FRED ROCCASECCA, DEFENDANT.
Superior Court of New Jersey, Law Division  (Criminal).
Decided October 18, 1974.
*587 Mr. Leonard Meyerson for defendant (Messrs. Miller, Hochman, Meyerson & Miller, attorneys).
Mr. Abel Goldstein, Assistant Prosecutor, for the State, (Mr. James T. O'Halloran, Prosecutor of Hudson County, attorney; Mr. Walter K. Schreyer, Assistant Prosecutor, on the brief).
SCHIAFFO, J.C.C., Temporarily Assigned.
Angelo Roccasecca was indicted on June 5, 1973 for working for a lottery and possession of lottery paraphernalia, in violation of N.J.S.A. 2A:121-3(a) and (b). He then moved to suppress certain evidence allegedly seized from the drawer of his worktable at the Jonathan Logan Dress Co., in North Bergen, New Jersey, pursuant to a search warrant issued by an acting Municipal judge of the Municipal Court of the Township of North Bergen.
Lt. William Sybel of the North Bergen Police Department, in his affidavit, stated:
I have received confidential information that Angelo Roccasecca of 26 Oakwood Drive, Wayne, N.J. picks up number slips from the workers at the Jonathan Logan Dress Company, 3901 Liberty Ave., *588 North Bergen, N.J. The subject writes down the action and then calls it in on telephone. Lieut. Joseph Dunlanie [sic] and I have kept the subject under surveillance for at least ten days and observed him go from worker to worker getting bets and writing them down. From my knowledge of gambling activities the subject collects the action and in turn calls it in to an organized outfit. The subject may also have slips in his 1968 Ford, color white, 2-door vehicle, reg. NMS 843 N.J. On occasion workers have approached him, handed him money, slips of papers with numbers on them, and joked about it.
The only grounds raised by defendant on his motion to suppress were the failure of the affidavit to state facts from which a finding of probable cause could be made, and the lack of jurisdiction of the judge issuing the warrant. The motion was heard by County Judge Young, who denied defendant's contentions without written opinion.
Almost a year later, in the course of preparing the case for trial, Lt. Joseph Dulanie, Sybel's partner, apparently had a conversation with an assistant prosecutor which contradicted the statements made by Lt. Sybel in the search warrant and in grand jury testimony. Dulanie subsequently submitted to the assistant prosecutor a signed statement setting forth his version of the events which led to the issuance of the warrant. Dulanie's statement alleges the following:
(1) During the first week of surveillance defendant had been observed at lunchtime outside of the factory in which he was employed.
(2) Dulanie and Sybel followed him to the Triangle Bar during Roccasecca's lunch hour.
(3) During the second week of surveillance (March 9, 1973) Dulanie entered the factory under the pretense of checking the alarm system.
(4) While in the factory, Dulanie observed defendant at his worktable writing numbers down and talking to other employees.
(5) However, Dulanie did not observe the defendant taking any bets. He only saw defendant refuse to take money from an employee on one occasion.
(6) On the evening of March 9 Dulanie went to the work area of Roccasecca's table and looked around.
(7) Dulanie opened a drawer in the table and discovered a package of papers containing numbers bets.
(8) Dulanie did not take anything from the drawer.
*589 (9) Dulanie notified Sybel of his discovery by telephone on the evening of March 9, and on March 10 he states that "we" secured a search warrant from Judge Tomasin of West New York.
It therefore appears that Lt. Sybel was incorrect when he stated in his affidavit in support of the search warrant that it was he and Dulanie who had "kept the subject under surveillance for at least ten days and observed him going from worker to worker getting bets and writing them down." Lt. Sybel's grand jury testimony also reflects that he had seen defendant taking bets.
Dulanie's statement did not come to the attention of defendant or his attorneys until September 1974. A meeting was held by the assistant prosecutor, defendant's attorney and this court, before which defendant is scheduled to be tried. Defendant's request to renew the motion was referred back to Judge Young, who subsequently deferred to this court. Thereupon, a hearing was held before this court. At the hearing Lt. Dulanie substantiated his written statement, conceding that he had searched defendant's worktable prior to the issuance of the search warrant.
The questions presently before this court are: (1) may the motion to suppress properly be renewed; (2) does the newly disclosed evidence render the search warrant invalid, and (3) was the gambling paraphernalia seized pursuant to a lawful search?

I
The first issue to be determined by the court is whether the discovery of new evidence permits defendant to renew a motion to suppress which was previously denied.
As has been previously stated, the initial motion to suppress was confined to the issues of probable cause and the jurisdiction of the issuing judge. Apparently neither the State nor defendant were aware of the activities of Lt. Dulanie which predated the issuance of the warrant. It is undisputed that defendant could not have learned of Dulanie's *590 search by the exercise of due diligence. Indeed, it was not until a year after the decision by Judge Young on defendant's motion that the prosecutor became aware of the nature of Dulanie's involvement in the case.
Defendant's request to renew the motion to suppress does not address itself to the issues previously raised. Rather, defendant contends that since Dulanie's statement was not in evidence when either the acting municipal judge issued the search warrant or Judge Young ruled upon the motion to suppress the evidence, the motion to suppress ought to be renewed in order that the court might consider the effect of Dulanie's statement and the alleged pre-warrant search. Therefore, defendant is questioning neither the issuance of the search warrant by local judge nor the ruling by Judge Young. The motion is made solely on the newly discovered evidence.
The posture of the renewal of the motion to suppress is analogous to the motion for a new trial. The question presented is whether the doctrine of the "law of the case" precludes the court from reconsidering the motion. As was cited by the court in State v. Hale, 127 N.J. Super. 407 (App. Div. 1974):
It has been generally stated that the "law of the case" doctrine "applies to the principle that where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that question for all subsequent stages of the suit." Wilson v. Ohio River Company, 236 F. Supp. 96, 98 (S.D.W. Va. 1964), aff'd 375 F.2d 775 (4 Cir.1967). This rule is based upon the sound policy that when an issue is once litigated and decided during the course of a particular case, that decision should be the end of the matter. United States v. U.S. Smelting Refin. and M. Co., 339 U.S. 186, 198, 70 S.Ct. 537, 94 L.Ed. 750 (1950). [at 410]
This doctrine "may be applied in a situation where one judge decides a pretrial motion to suppress, but another judge conducts the trial. In such a case, the decision rendered at the pretrial hearing may be said to be the law of the case during the subsequent trial." State v. Hale, supra at 411; emphasis added.
*591 However, it is correctly stated in Hale that the "law of the case" doctrine "operates only as a discretionary rule of practice and not one of law." 127 N.J. Super at 411. See also, State v. Bell, 89 N.J. Super. 437 (App. Div. 1965). Where, as here, new evidence comes to light which was unavailable at the time of the original hearing on the motion through no fault of the movant, the court should not be foreclosed from considering the weight, if any, to be afforded the new evidence.
While there are no New Jersey decisions dealing with the discretionary power of the trial judge to reconsider suppression motions, the policy is well recognized in the federal courts. See, for example, Rouse v. United States, 123 U.S. App. D.C. 348, 359 F.2d 1014 (D.C. Cir.1966); United States v. Montos, 421 F.2d 215 (5 Cir.1970), cert. den. 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970); Naples v. United States, 123 U.S. App. D.C. 292, 359 F.2d 276 (D.C. Cir.1966); McRae v. United States, 420 F.2d 1283 (D.C. Cir.1969).
In Rouse, supra, Judge Bazelon stated:
A pretrial ruling on a motion to suppress does not bind the trial judge in all circumstances. New facts, new light on credibility of government witnesses, or other matters appearing at trial may cast reasonable doubt on the pretrial ruling. [359 F.2d at 1015]
Finally, it should be noted that the State in the memorandum of law which it submitted in opposition to the instant motion does not dispute the right of defendant to a rehearing on his motion, but confines itself to the two points to be considered next.

II
In State v. Petillo, 61 N.J. 165 (1972), it was held that the truth of the factual assertions contained in the affidavits submitted in support of an application for a search warrant may not be contraverted on a subsequent motion to suppress *592 the evidence seized in the execution of the warrant. See also, State v. Carluccio, 61 N.J. 125 (1972).
The State relies upon Petillo in support of the contention that the defendant is precluded a secondary inquiry into the allegations contained in the affidavit in support of the application for the warrant.
Petillo is, however, inapplicable to the instant motion. There is no doubt that there was ample probable cause demonstrated by the affidavit of Lt. Sybel in support of the application for the warrant. This was the finding of acting municipal judge and was affirmed by Judge Young. This court does not seek to disturb these findings. Moreover, such an inquiry is clearly prohibited by Petillo and Carluccio. Were the only question raised on this motion the veracity of the Sybel affidavit and the validity of the search warrant, the motion would clearly be denied.

III
The evidence clearly establishes that Lt. Dulanie searched defendant Roccasecca's worktable prior to the issuance of any search warrant. The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
The Fourth Amendment is made applicable to the States through the Due Process Clause of the Fourteenth Amendment. Evidence seized in violation of the Fourth Amendment is subject to exclusion in the state courts. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
Searches which are conducted without the issuance of a search warrant are valid only if they come within certain *593 exceptions. The court here reviewed the case law as to such exceptions. None of these exceptions are applicable herein.
While the premises searched did not belong to defendant, he had a reasonable expectation of privacy in the area assigned to him in the factory, at least as far as the drawer of his worktable was concerned.
The fact that Dulanie was employed by the Jonathan Logan factory as a part-time security consultant is irrelevant to the question of his authority to search the defendant's drawer. Dulanie testified that he considered himself on duty as a police officer 24 hours a day. There is no evidence that the investigation of lottery activities came within the scope of his employment by Jonathan Logan. Nor is there any evidence to indicate that Jonathan Logan consented to Dulanie's activities or was even aware of them. This court, therefore, finds that Dulanie was acting as a North Bergen, New Jersey, police officer when he conducted his search. The search being without a warrant and not falling within any of the permissible categories for warrantless searches, it was violative of the Fourth Amendment, made applicable to the states by the Fourteenth Amendment.
Evidence obtained by unlawful means is subject to the sanction of a exclusionary rule and is not permitted to be used against the defendant in a criminal prosecution. An offshoot of the exclusionary rule is the "fruit of the poisonous tree" doctrine which, in addition to barring evidence directly seized, extends to evidence indirectly obtained by virtue of information or leads obtained in the unlawful search. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).
Even though the evidence is derived from unconstitutional methods, the evidence may still be admissible if it falls within the "purged taint" exception enunciated in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The court stated that in each case the controlling test is "whether, granting establishment of *594 the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 488, 83 S.Ct. at 417.
It has been stated that "The standard thus enunciated incorporates both the `independent source' and the `attenuated connection' limitations to the fruit of the poisonous tree doctrine." Annotation, 43 A.L.R.3d 385, 391 (1972).
The question therefore presented is whether the evidence seized in the instant case has been come at by exploitation of the unlawful search conducted by Lt. Dulanie or by valid sufficiently distinguishable means. Lt. Dulanie virtually concedes that the search warrant was obtained as a direct result of the unlawful search when he states in his sworn statement, "I then notified Lt. Sybel of my discovery [via telephone on the same evening] and on March 10, 1971 [the following morning] we secured a search warrant * * *." (Lt. Dulanie's testimony corroborated his sworn statement in that he stated that he and Lt. Sybel secured the search warrant as the first order of business on the morning of March 10.)
The fact that Lt. Dulanie notified Lt. Sybel on the evening of March 9, and secured a search warrant with Sybel on the following morning, indicates that the unlawful search had a significant impact on Sybel and Dulanie's decision to secure a search warrant. This is not to say that the taint of the unlawful search would have been dissipated if a search warrant had been obtained several days later. However, the close time sequence of the unlawful search and the application for the search warrant leads this court to find that the unlawful search does taint the search warrant, rendering the evidence subsequently seized inadmissible. "Well reasoned opinions of Federal Courts, while not binding, are persuasive on the issue of reasonableness of a search and seizure, in absence of decisions of New Jersey reviewing courts." State v. Chance, 71 N.J. Super. 77 (Cty. Ct. 1961), *595 as cited in State v. Manghan, 126 N.J. Super. 162, 166 (Law Div. 1973).
In United States v. Paroutian, 299 F.2d 486 (2 Cir.1962), defendant's apartment was searched twice unlawfully by narcotics agents prior to a third and lawful search. On the last occasion the agents discovered a secret compartment in a closet which they had previously examined. The court held that the evidence actually seized during the third search was tainted by the first two illegal searches. Only if the government had shown that it had knowledge of the secret compartment in the closet from an independent source would the evidence have been admissible. Id. at 489. This reasoning was adopted by the court in United States v. Soviero, 357 F. Supp. 1059, 1062 (S.D.N.Y. 1972).
In Soviero, it was found that agents had entered defendant's apartment before they had sought and obtained a search warrant. In considering the evidence seized after the issuance of the warrant the court, relying on Paroutian, supra 299 F.2d at 489, held that "once there is an illegal search and defendant has introduced `substantial' evidence showing that the items were discovered as a result of the illegal search, the burden shifts to the government `to prove that its evidence had an independent origin.'" 357 F. Supp. at 1062.
In the instant case the State did not show that it had knowledge from an independent source indicating the existence of the lottery slips in defendant's worktable. It was incumbent upon the State to offer proof indicating that application for the search warrant was made either despite or without reliance upon the illegal search. The State did not call Lt. Sybel to testify, and it is possible that his testimony would have revealed that the affidavit which he executed was in fact free from taint. Clearly, the State did not meet its burden of showing that it would have sought a search warrant regardless of the illegal search. The court in Soviero, supra, 357 F. Supp. at 1062, further relies upon Paroutian, supra, 299 F.2d at 489, when it states that "It may well be that reasonable agents would likely have sought a search *596 warrant based on other information about Soviero which they possessed. Nevertheless, as the Paroutian court said, `The test must be one of actualities, not possibilities.'"
Defendant's motion to suppress the evidence seized on March 10, 1971 is granted.