147 N.J. Super. 522 (1977)
371 A.2d 758
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN T. MATHER, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided January 17, 1977.
*523 Mr. James A. Key, Jr., Assistant Prosecutor, for plaintiff (Mr. Joseph C. Woodcock, Jr., Bergen County Prosecutor, attorney).
Mr. Anthony J. Pace, attorney for defendant.
TROAST, J.D.C., Temporarily Assigned.
This is an amplification of an oral opinion rendered on a motion to suppress evidence under the "fruit of the poisonous tree" doctrine. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Movant contends that the fruits of an initial warrantless search resulted in the three subsequent searches involved in this case and that notwithstanding the issuance of search warrants prior to those searches, all the evidence seized must be suppressed. Cf. State v. Roccasecca, 130 N.J. Super. 585 (Law Div. 1974); see also, Annotation, "Fruit of Poisonous Tree," 43 A.L.R.3d 385.
The facts are that Sergeant William J. Smith of the Saddle River police department was on routine patrol at about 10 p.m. on May 12, 1976 when he observed what he considered a suspicious motor vehicle parked on Old Woods Road. The vehicle was legally parked and there was no basis for believing that there had been any violation of the law at that time. He proceeded to investigate and observed that the key was in the ignition of the vehicle. The vehicle was not locked and the officer proceeded to search the interior by entering the vehicle and opening the glove compartment. In the glove compartment he found a wallet containing $135 in cash, movant's driver's license and a college identification card *524 with movant's photograph. The officer removed the key case containing the ignition key and several other keys and the wallet containing the $135 and the identification card.
Sergeant Smith had returned to his patrol car when he received a call over the police radio advising that a burglar alarm had sounded at the Dukes residence on Winding Way in Saddle River. As a result of the radio alarm Smith proceeded to the Dukes residence which was about two tenths of a mile away. At the Dukes residence he found evidence of a breaking and entry, and an investigation of that crime led the police back toward movant's vehicle. Further investigation revealed that certain items of personal property taken from the Dukes residence were in bushes near movant's vehicle. Thereafter at about 1:20 a.m. the police observed a suspicious motor vehicle passing movant's vehicle at a slow speed. The police caused the suspicious vehicle to be stopped in an adjacent municipality, and using the identification card seized from movant's vehicle one of the occupants of the suspicious vehicle was identified as movant.
After movant's arrest and the impounding of his vehicle a search warrant providing for a further search of his vehicle was issued, and a search of the trunk revealed a screw driver, a crow bar and surgical gloves. Subsequent search warrants provided for a search of movant's home.
The court has granted movant's application to suppress the evidence seized as a result of the initial warrantless search of movant's motor vehicle. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In the present case there was no violation of the motor vehicle and traffic regulations and no other reason was given for the search of the lawfully parked vehicle. Movant's vehicle had not been impounded and there is no evidence that Smith intended to take the vehicle into police custody. Cf. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). However, movant seeks to suppress all evidence, arguing that the evidence seized after issuance of the search warrants was based in part on information *525 obtained as a result of the unlawful search. In the absence of decisions of appellate courts in New Jersey, decisions in the federal courts are persuasive. State v. Chance, 71 N.J. Super. 77, 79 (Cty. Ct. 1961). In James v. United States, 135 U.S. App. D.C. 314, 418 F.2d 1150 (1969), it was noted that the United States Supreme Court has not had occasion to consider the issue of whether the "fruit of the poisonous tree doctrine" is applicable to a search warrant that issues on the basis of information both lawfully and unlawfully obtained. In James, a police officer, while looking through a garage door which was partially opened, observed a completely stripped car. The officer entered the garage, copied the rear license plate of the car and conducted a search which disclosed an owner's manual. A check at police headquarters revealed that the vehicle had been stolen. The officer thereafter applied for a search warrant. In holding that the District Court had properly suppressed the rear license plate and owner's manual but properly admitted in evidence items seized after the issuance of the warrant, the Court of Appeals said:
When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. Wong Sun v. United States, in announcing the "fruit of the poisonous tree" doctrine, limited the exclusionary rule to evidence which the police could not trace to some "independent" and lawful source. While the Supreme Court has not specifically had occasion to consider whether this doctrine is applicable to a search warrant that issues on the basis of an affidavit setting forth information both lawfully and unlawfully obtained, other circuits have applied the "independent source" test. If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted. [at 1151]
Similarly in United States v. Sterling, 369 F.2d 799 (3 Cir.1966), a government agent was investigating an individual who had a previous record of violating the liquor laws. From a vantage point on that individual's property *526 the agent observed defendant pouring liquor into what the agent believed to be storage tanks under the garage floor. The agent attempted to arrest defendant but was unable to do so when defendant resisted arrest. Thereafter a search warrant was issued and certain evidence was seized. While the court in that case was inclined to hold that the agent's entry on the property was justified, the court said:
[L]et us assume that the entry was illegal and that the information obtained at that time was improperly included in the affidavit for the search warrant. Nevertheless, the law is quite clear that the inclusion of illegally obtained evidence does not vitiate a search warrant which is otherwise validly issued upon probable cause reflected in the affidavit and based on proper sources. Clay v. United States, 246 F.2d 298 (5th Cir.1957), cert. den. 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed.2d 69; Chin Kay v. United States, 311 F.2d 317 (9th Cir.1963). Here the evidence sufficient to support "probable cause" was not procured as a result of the allegedly illegal activity, and thus could not be said to be the fruit of a poisoned tree. [at 802]
The "fruit of the poisonous tree" doctrine prohibits the use in a criminal prosecution of evidence derived from information obtained by unlawful means. State v. Roccasecca, 130 N.J. Super. 585, 593 (Law Div. 1974). However, the Roccasecca case recognized that even though evidence is derived from unconstitutional methods, it may still be admissible if it falls within the "independent source" or "attenuated connection" limitations to the "fruit of the poisonous tree" doctrine. Id. at 594. There is also authority in other jurisdictions for an exception to the "fruit of the poisonous tree" doctrine where the court finds the evidence derived from information obtained in an unlawful search would have been inevitably discovered through legal means regardless of the prior unlawful search.
In People v. Reisman, 29 N.Y.2d 278, 327 N.Y.S.2d 342, 277 N.E.2d 396 (Ct. App. 1971), cert. den. 405 U.S. 1041, 92 S.Ct. 1315, 31 L.Ed.2d 582 (1972), an airline employee in California detected a quantity of marijuana scheduled for shipment to defendant in New York. The employee *527 notified the Los Angeles police, who conducted a warrantless search and seized a portion of the shipment. The New York police were alerted and they thereafter intercepted it. In the Reisman case it was argued that since the California search had been declared unlawful and since information obtained as a result of that search had been transmitted to the police in New York, the evidence seized in New York should also be suppressed. The Reisman court noted that information given to the New York police by the California police included the airline's employee's information concerning the marijuana in the shipment going from California to New York. The New York Court of Appeals applied the "inevitable discovery" exception,[1] stating:
The presence of independent untainted information distinguishes this case from Silverthorne Lbr. Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 and Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 which incepted the exclusionary derivative evidence rule. Independent untainted evidence establishing probable cause for police conduct will sustain the arrest or seizure even if there has been antecedent illegal conduct by the police (Wong Sun v. United States, 371 U.S. 471, 487-488, 83 S.Ct. 407, 9 L.Ed.2d 441; Silverthorne Lbr. Co. v. United States, supra, 251 U.S. at p. 392, 40 S.Ct. 182). Indeed, when, as in this case, the untainted information "would have inevitably resulted" in the New York surveillance, and then the arrest and seizure, the rule with its appendant exception is more than satisfied (Wayne v. United States, 115 U.S. App. D.C. 234, 318 F.2d 205, 209 [Burger, J.], cert. den. 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86; Harlow v. United States, 5 Cir., 301 F.2d 361, 372-373, cert. den. 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56; Hernandez v. United States, 5 Cir., 353 F.2d 624, 628, cert. den. 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021). 277 N.E.2d 396 (1971). [327 N.Y.S.2d at 347, 277 N.E.2d at 399 (1971)]
In the Roccasecca case, supra, a police officer who had the defendant under surveillance conducted a warrantless search of the drawer of Roccasecca's worktable at his place of employment and discovered a package of papers containing numbers bets. In that case the court suppressed certain lottery *528 paraphernalia seized pursuant to a search warrant issued after the warrantless search, stating:
In the instant case the State did not show that it had knowledge from an independent source indicating the existence of the lottery slips in defendant's worktable. It was incumbent upon the State to offer proof indicating the application for the search warrant was made either despite or without reliance upon the illegal search. [130 N.J. at 595]
In this case it was neither the initial warrantless search nor the fruits of that search which caused the police to go to and commence an investigation of the burglary at the Dukes home but rather it was an independent source of information, the police radio report, which caused Smith to be dispatched for that purpose. He and others proceeded with an investigation of the crime and the investigation led them back to movant's vehicle. In contrast to the police activity in the Roccasecca case, supra, in this case Smith's initial search was not a warrantless search for evidence upon which to convict a man already suspected of a crime. In any event, the court is satisfied that in this case there was an independent source of information upon which to base the issuance of the warrants and, further, that the challenged evidence would have been inevitably discovered through legal means regardless of the initial warrantless search. Accordingly, the motion to suppress the evidence seized after movant's arrest pursuant to the three search warrants is denied.
NOTES
[1] See "The Inevitable Discovery Exception to the Constitutional Exclusionary Rules," 74 Colum. L. Rev. 88 (1974).