Breitel, J.
Following a jury trial, defendant was convicted of possession of a dangerous drug in the first degree pursuant to section 220.20 of the Penal Law. The crime arose from his receipt of 46 pounds of packaged marijuana at Kennedy International Airport.
The principal issue is whether the marijuana seized following defendant’s arrest should have been suppressed because some information leading to the arrest was improperly obtained by California police officers in another prosecution. Another important issue is whether defendant’s possession of the marijuana is sufficient to infer his knowledgeable possession. A pretrial hearing had been conducted on defendant’s motion to suppress the seizure of this and other marijuana found in a vehicle used by defendant.
The conviction should be affirmed. The New York surveillance and arrest did not depend necessarily in whole or in part on the purportedly illegal California police search. The motion to suppress was properly denied. There was independent and untainted cause, an airline employee’s information, for the California police to advise the New York police whose independent confirmatory observations resulted in defendant’s arrest. The proof of defendant’s physical possession, by consignment, delivery and acceptance, was warrant for the jury to infer his knowledge.
Richard Dunkel, a customer service agent for American Airlines at Los Angeles International Airport, became suspicious of two cartons delivered to the terminal by one Peter Atyt. The *282 cartons had been left for shipment to New York’s Kennedy Airport, consigned to George Carlton care of defendant, Tanker Beisman. Acting under tariff regulations, Dunkel slit the larger of the two cartons and observed what, from his previous experience, he believed to be marijuana. The Los Angeles police were notified and without a search warrant inspected the contents and confirmed Dunkel’s discovery. One of the cartons was emptied of its contents, refilled with sand, and both cartons were sent on their way. At 11:30 p.m. that evening, Sergeant McKnight, one of the officers involved, telephoned Detective Michael Tobin of the New York City police, for 12 years a member of its Narcotics Bureau. According to Detective Tobin, McKnight told him that marijuana was on its way to Kennedy Airport. “We have already got some out. The airline employee found it.”
Equipped with defendant’s name, the air flight number, arrival time, and air bill number, Detective Tobin went to Kennedy Airport the following morning. At 7:00 a.m. the two described cartons arrived. They were marked ‘[1] George Carlton in care of Tanker Beisman ”. Detective Tobin approached close to the .shelved cartons and detected a strong odor of marijuana. He did not open the cartons but kept them under surveillance.
That evening at about 11:00 p.m. defendant Beisman appeared at the airlines terminal and approached Detective Tobin who was attired in an American Airlines uniform. Upon stating that he wished to claim certain packages, Tobin directed him to the freight agent. Defendant identified himself and signed the air bill, while Tobin accompanied him. Apparently from a distance, defendant picked out the appropriate packages. The detective, assisting Beisman, then carried one of the cartons, containing the sand, to the parking lot when he was intercepted by a companion of Beisman who insisted upon carrying the carton the rest of the way to an automobile. Tobin surrendered the carton and waited for both men to reach the car. He then arrested both men, seized the two cartons, and made further searches with the assistance of two Federal agents. A search of Beisman produced a paper with the notation “ No. 6615254, To George Carlton, care of me [Beisman], N. Y. C. hold American No. 10643 to 830 ”, and a check made out to Beisman and indorsed by him to Peter Abt, the consignor. The search of the car *283 disclosed small quantities of marijuana. The possession of small quantities, the subject of the second count of the indictment for drug possession in the second degree, is no longer relevant since both defendants, Reisman and his companion, were acquitted on that charge.[1]
At the suppression hearing defendant argued that the surveillance, interception, and arrest resulted directly from the unlawful search in California by Sergeant McKnight of the Los Angeles police. Defendant urged that the illegal police activity in California resulted in the seizure in New York of the remaining carton of marijuana, and, therefore, required its suppression. Reisman relied on a California Supreme Court order in the California prosecution of the consignor Abt determining that Sergeant McKnight’s search was illegal not for absence of probable cause but for lack of a warrant when the circumstances permitted obtaining one. (Abt v. Superior Ct., 1 Cal. 3d 418.)
The suppression court in denying the motion accepted the illegality of the search by the Los Angeles police. It held, however, that the prior unofficial search by the airlines employee at the Los Angeles airport was an untainted and independent basis for transmitting the information to New York City and prompting police surveillance in this State.
Upon the trial defendant Reisman was convicted of the felony possession charge and his codefendant acquitted. As noted earlier, both defendants were acquitted of the charge related to the small quantity of marijuana found in the automobile. In acquitting the codefendant of all charges, the jury probably accepted his testimony that he was only doing Reisman a favor in accompanying him and believed the cartons to contain men’s and women’s clothing. Reisman did not testify.
It would be unrealistic to atomize the several facts relied upon by the New York police as influential in making the arrest and incidental search. To be sure, when Tobin placed the cartons *284 under surveillance and subsequently arrested defendant, he undoubtedly relied on all the information from Sergeant McKnight. But he would have similarly responded if only the Dunkel information had been transmitted. Tobin, in either event, would have intercepted the cartons at the airport the following morning. An outward inspection of the marijuana carton with its telltale odor associated, by experience, with marijuana would have prompted surveillance and justified the ensuing arrest. No arrest warrant was necessary since the Dunkel information and the odor of marijuana gave Tobin probable cause to believe that a crime was being committed in his presence (former Code Crim. Pro., § 177, subd. 1; now CPL 140.10). The arrest being based on probable cause, the police were entitled to seize the contraband known to them to be such, and continuously within their observation (People v. Gallmon, 19 N Y 2d 389, 394; Harris v. United States, 390 U. S. 234, 236).
The presence of independent untainted information distinguishes this case from Silverthorne Lbr. Co. v. United States (251 U. S. 385) and Nardone v. United States (308 U. S. 338) which incepted the exclusionary derivative evidence rule. Independent untainted evidence establishing probable cause for police conduct will sustain the arrest or seizure even if there has been antecedent illegal conduct by the police (Wong Sun v. United States, 371 U. S. 471, 487-488; Silverthorne Lbr. Co. v. United States, supra, at p. 392). Indeed, when, as in this case, the untainted information “would have inevitably resulted” in the New York surveillance, and then the arrest and seizure, the rule with its appendant exception is more than satisfied (Wayne v. United States, 318 F. 2d 205, 209 [Burger, J.], cert. den. 375 U. S. 860; Harlow v. United States, 301 F. 2d 361, 372-373, cert. den. 371 U. S. 814; Hernandez v. United States, 353 F. 2d 624, 628, cert. den. 384 U. S. 1008).
The result is eminently sensible. The New York police should not be handicapped by police illegality in another jurisdiction which is not “necessarily responsible ” for the present prosecution, that is, is not an essential ingredient to the New York prosecution. Moreover, in the absence of collusion between the police of the two jurisdictions, the exclusion of the otherwise properly obtained New York evidence serves no legitimate purpose.
*285 Defendant also contends that the suppression order of the California court in the prosecution of Peter Abt, the consignor of the cartons, was not given the required full faith and credit in the present proceeding. Res judicata, as distinguished from other procedural hars to the relitigation of crimes or particular issues, is not applicable to criminal prosecutions in quite the same way as that body of doctrine is applicable to civil cases (see, generally, Ann., Bes Judicata—Criminal Cases, 9 ALB 3d 203). On any view, neither direct nor collateral estoppel is established by this record. Identity of the prosecuting party is an indispensable precondition to the invocation of either kind of estoppel (People v. Lo Cicero, 14 N Y 2d 374, 380; United States v. Feinberg, 383 F. 2d 60, 71; Ann., 9 ALR 3d, at pp. 215-218, supra). There is equally absent an identity of issues, also required for estoppel (id.). Indeed, the suppression court in New York assumed the illegality of the California search, but the question in this case turned on the effect which that illegality would have, if any, on the subsequent New York police conduct. That, of course, was never before the California court.
Conceding transitory manual possession of the packaged contraband, defendant argues that the prosecution failed to establish knowledgeable possession. Proof of such possession, defendant urges, is equally consistent with defendant’s lack of knowledge of the contents, and therefore the indictment should have been dismissed.
The crime of possessing dangerous drugs requires a physical or constructive possession with actual knowledge of the nature of the possessed substance (Penal Law, §§ 220.05-220.20). Knowledge, of course, may be shown circumstantially by conduct or directly by admission, or indirectly by contradictory statements from which guilt may be inferred (see, e.g., People v. Groom, 60 Cal. 2d 694, 696; People v. Embry, 20 Ill. 2d 331, 332; 72 C. J. S., Poisons, § 7, subd. c, par. [2]). Generally, possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises (e.g., 2 Wigmore, Evidence [3d ed.], §§ 244-245, 260; cf. Kuchlik v. Feuer, 239 App. Div. 338, 339). This, of course, is an elemental inference based on common experience and all but universal probabilities. Thus it is an ancient rule of inference or rebuttable *286 presumption of fact that the recent and exclusive possession of the fruits of any crime warrants the inference of guilt, including, when material, knowledgeable possession (Wigmore, op. cit., supra, vol. 1, § 152, vol. 9, § 2513; Richardson, Evidence [9th ed.], § 88 and cases cited). In the case of contraband its possession is a crime per se, and hence the inference of guilt, that is, knowledgeable possession, is as strong as is the case, for instance, with stolen goods (e.g., People v. Roman, 12 N Y 2d 220, 222; People v. Berger, 260 App. Div. 687, 689-690, affd. 285 N. Y. 811; Wigmore, op. cit., supra, § 152; Richardson, loc. cit., supra).
By statutes or decisional precedents the rule and variants have been applied to dangerous drugs (see, e.g., U. S. Code, tit. 21, § 174, repealed 84 U. S. Stat. 1291; U. S. Code, tit. 26, § 4744, repealed 84 U. S. Stat. 1292; Penal Law, § 220.25; People v. Nettles, 23 Ill. 2d 306, 308; People v. Cirilli, 265 Cal. App. 2d 607, 612-613; People v. Hokuf, 245 Cal. App. 2d 394; Wong Sun v. United States, supra, at p. 493; 72 C. J. S., Poisons, § 7, subd. c, par. [1]).[2] The statutory presumptions are without validity unless the probabilities based on experience and proof justify them (Leary v. United States, 395 U. S. 6, 32-36; People v. McCaleb, 25 N Y 2d 394, 400-404). Consequently, it makes no significant difference for this purpose whether knowledge is presumed by statute or inferred by reasoning without the benefit of statutory presumption. In either event, the probabilities must justify the one or the other, although the probabilities to support a statutory presumption, it has been said, need not be as great as to support an inference in a criminal case (cf. People v. McCaleb, 25 N Y 2d, at pp. 400-403, supra).
Moreover, the foregoing reasoning is particularly applicable to dangerous drugs as the Illinois court said so aptly, albeit with reference to possession in premises rather than on the person: “ [W]here narcotics are found on premises under defendant’s control, it may be inferred that the defendant had both knowledge and control of the narcotics. The inference is based largely upon the nature of the commodity and the manner in which its illegal traffic is conducted * * * [T]hey are sold for exorbitant sums on the black market and are therefore *287 of great value to the person possessing them. Furthermore, since their mere possession may subject such person to severe criminal consequences, the narcotics traffic is conducted with the utmost secrecy and care. Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person’s living quarters.” (People v. Nettles, 23 Ill. 2d 306, 308, supra.) Indeed, the language applies with even greater force to possession on or about the person.
The probabilities justifying the inference of knowledge in this case are unusually impressive. The marijuana was in defendant’s hands when he accepted delivery. This under the rules is sufficient to permit the inference of knowledge subject, of course, to rebuttal by countervailing proof. But there was much more in this case. The consignment was made in care of defendant. It is significant defendant had on his person a check indorsed over as payable to the consignor. Defendant accepted delivery on the consignment which together with the check established that the transaction was one of which he had full awareness. Moreover, defendant claimed the packages as his apparently before he was near enough to read or identify their markings. It could not be one of those rare instances where one may receive and accept a package unanticipated from an unknown sender.
For a residual issue, defendant requested a charge of the misdemeanor of criminal drug possession in the fourth degree, a crime which does not require any particular minimum quantity of the drug (Penal Law, former § 220.05, as enacted by L. 1965, ch. 1030). Interestingly, defendant had previously and successfully moved to have the fourth count of the indictment, criminal possession in the fourth degree, dismissed. Possession in the first degree (Penal Law, former § 220.20, as enacted by L. 1965, ch. 1030) depended on the quantity of the drug involved. The weight of the contraband in the carton was uncontradicted. Moreover, the nature of the case and its circumstances depended entirely on a commercial-like shipment of the large quantity. The case could stand or fall on that proof and no other. Consequently, under no view of the facts, because there was no basis in any of the evidence, could the jury find the accused innocent of the higher crime and yet guilty of the misdemeanor which required no minimum quantity (People v. Asan, 22 N Y 2d *288 526, 530; People v. Malave, 21 N Y 2d 26, 28-29; People v. Mussenden, 308 N. Y. 558, 563; People v. Clemente, 285 App. Div. 258, 274-278 [dis. opn.], affd. 309 N. Y. 890).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Jasen and Gibson concur.
Order affirmed.

. Two days later, while defendant Reisman was in custody, Detective Tobin received information from American Airlines at La Guardia Airport that two metal cartons had arrived also consigned to Carlton care of defendant Reisman. Tobin opened the containers, without a warrant, and discovered 100 bricks of marijuana weighing 270 pounds. This evidence, however, was not offered on the trial, although the suppression court had allowed its introduction.

. But cf. People v. Ackerman, 10 Cr. L. Reporter 2063 (Ill. App. Ct.).