(January 15, 1991)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERTO CASTRO-RESTREPO, Appellant.—Judgment of the Supreme Court, New York County (Edward McLaughlin, J.), rendered on November 17, 1988, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]) and sentencing him to an indeterminate term of 17½ years to life, unanimously reversed on the law and as a matter of discretion in the interest of justice, and the matter remanded for a new trial in connection with which defendant is to be afforded an opportunity to renew his suppression motion.

Defendant-appellant Alberto Castro-Restrepo has been convicted of criminal possession of a controlled substance in the

first degree (Penal Law § 220.21 [1]). The conviction arises out of events which occurred on March 24, 1988. On that date, the defendant was observed by State Investigator Baum exiting 252 East 78th Street carrying three apparently heavy bags. He walked with the bags to a maroon Chevrolet Caprice parked a short distance away. The driver of the Caprice, codefendant Herman Gonzalez, had opened the car's trunk and waited at its rear. Either as Castro-Restrepo put the bags in the truck or immediately afterward, Baum placed him and Gonzalez under arrest. Baum then performed a warrantless search of the bags. He found what was subsequently determined to be 25 kilograms of cocaine.

Castro-Restrepo and Gonzalez were thereafter indicted for criminal possession of a controlled substance in the first degree. Joined in the same indictment were counts charging codefendant Gonzalez alone with both criminal possession and criminal sale of a controlled substance in the first degree. These latter counts, which the People now concede were misjoined (see, CPL 200.40 [1]), concerned matters which occurred on March 23, 1988, one day before the events leading to Castro-Restrepo's arrest.

The proof at trial indicated that on March 23rd State investigators observed Gonzalez arrive at 86th Street and First Avenue in Manhattan driving a maroon Chevrolet Caprice with a license plate bearing the number LXG935. Gonzalez, who drove the car, together with two other Hispanic men, got out of the car and walked to a nearby pay phone. One of the men who had been a passenger in the car and, as the jury would learn, was himself subsequently arrested for possession of a large quantity of cocaine, then used the phone. From time to time he removed the receiver from his ear and spoke to his companions. Gonzalez soon left the vicinity of the pay phone and moved the maroon Caprice from where it had been parked. A short time later he returned to the area, this time parking the Caprice on First Avenue about a quarter block north of 86th Street. When the men who had been congregated near the pay phone saw Gonzalez, one of them, the man who had spoken on the phone, walked over to the Caprice and, once there, received from Gonzalez a green duffel bag which Gonzalez had removed from the car's trunk. Gonzalez then drove away. The man who had received the duffel bag drove away in a different car. He was subsequently stopped and arrested. The green duffel bag seized as a result of the arrest was found to contain about 24 kilograms of cocaine.

Respecting Gonzalez's involvement in the offenses said to

have occurred on the following day, March 24th, Investigator Baum testified that he observed the maroon Caprice which had been driven by Gonzalez the day before, parked on First Avenue in the vicinity of 75th and 76th Streets. Soon after spotting the car, Baum noticed Gonzalez in the company of other men using a pay phone located on 75th Street. A short time later, Baum observed Gonzalez walk past his, Baum's car, carrying some empty bags and return some minutes later, again walking past Baum's car, this time empty-handed. After a brief interval, Gonzalez passed Baum a third time, on this occasion driving the maroon Caprice. Baum followed the Caprice to 78th Street between Second and Third Avenues. It was at this location that Baum observed the above-described transaction between Gonzalez and Alberto Castro-Restrepo.

Gonzalez testified in his own behalf. He stated, in substance, that he was a gypsy cab driver whose participation in the March 24th transaction had been entirely innocent since he was merely responding to a call for cab service and did not know what was in the bags which were placed in the trunk of his cab. He denied any participation in the transactions of the previous day and stated that the testimony of the investigators implicating him in those transactions was mistaken. In the course of his testimony concerning the March 24th transaction, he confirmed Baum's testimony that it had been appellant who carried the bags from the door of 252 East 78th Street to the maroon Caprice.

Upon learning that Gonzalez would testify, and that his testimony would confirm that appellant had, indeed, carried the bags of cocaine to the Caprice, appellant's counsel moved to sever Castro-Restrepo's case from that of his codefendant. He urged that severance was necessary since Gonzalez's testimony "could be antagonistic to the position and posture of the defendant Castro". The motion was denied, and among the issues presently raised by appellant is the propriety of that denial.

In *People v Mahboubian* (74 NY2d 174, 184), the Court of Appeals set forth the very limited circumstances under which the antagonistic position of a codefendant would be considered sufficiently prejudicial to require a court, in the sound exercise of its discretion, to grant a motion pursuant to CPL 200.40 (1) for severance: "[S]everance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt". Clearly, the situation

presented by the facts at bar does not come close to meeting this exacting standard, for although Gonzalez's testimony did conflict with appellant's contention that he had not carried the bags, the defense of both defendants, as portrayed to the trial court, was ultimately that neither knew what was in the bags. Certainly, nothing about Gonzalez's defense was irreconcilable with appellant's core claim of ignorance as to the contents of the bags. We conclude then that severance was properly denied, but only insofar as the motion therefor was premised upon the antagonistic positions of the defendants.

While severance was not required on the aforementioned ground, it is clear that certain counts—those involving Gonzalez alone—ought never to have been included in the indictment pursuant to which appellant was tried. The inclusion of those counts, which permitted the introduction of extensive evidence concerning Gonzalez's activities in connection with the offenses of March 23rd, was highly prejudicial to the appellant and, although the error is not preserved as a matter of law, we reach it in the interest of justice.

The combined effect of the testimony concerning Gonzalez's participation in the crimes charged on both the 23rd and 24th of March 1988 was to portray him to the jury as a regular operative in a conspiracy to deal in narcotics. On two days in succession he had been seen in the company of others congregated around a pay phone. In obvious response to what had transpired on the phone, Gonzalez on each day drove to a location where large quantities of cocaine were placed in the trunk of the car he drove. The inference would have been irresistible to the jury that Gonzalez and the people with whom he dealt, including the appellant, were well aware of the nature of their activity. Had those counts concerning the offenses which occurred on the 23rd been properly excluded from the indictment, Gonzalez's role as an apparent daily courier of narcotics for a drug ring would not have come to the jury's attention and the jury would have been far less prone to view Gonzalez's brief association with the appellant as yet another transaction between knowledgeable members of a farflung conspiracy to deal in drugs.

The evidence which would have been admissible against the appellant had he been tried upon a properly drawn indictment was not overwhelming. It would have shown no more than that, on the 24th of March, he carried three heavy bags subsequently found to contain cocaine the short distance between the entrance of 252 East 78th Street and Gonzalez's waiting Caprice. There was no direct evidence that appellant

knew what was in the bags. While the jury was permitted to infer from appellant's possession of the bags that he knew what they contained, and the evidence was therefore sufficient to support the verdict *(see, People v Reisman,* 29 NY2d 278, 285; *but see, People v Scott,* 64 AD2d 525), the jury might well have declined to draw the inference of knowledge necessary to the conviction had its consideration been properly limited to evidence of the crime with which the appellant had been charged. The brief and transitory nature of appellant's possession of the bags was not by itself a compelling basis from which to infer his knowledge of their contents. There was little properly before the jury upon which it might have conclusively discounted the hypothesis that appellant had simply been asked to carry some heavy bags to a cab waiting just outside the building. It is hard to avoid the conclusion that, in the end, it was only in view of the evidence of Gonzalez's daily activity as a courier of drugs between members of a well-organized drug ring, that the jury became convinced of appellant's culpability.

The danger of a conviction in this case based upon evidence of crimes which should not have charged in the indictment pursuant to which the appellant was tried was only enhanced by the trial court's supplemental charge. After returning a verdict against Gonzalez on all counts, the jury specifically inquired of the court as to "the relevance of the entire body of evidence from the trial as a whole in reaching a conclusion about a defendant's knowledge". The court responded, "[W]ith regard to the relevance of the entire body of evidence *[sic]*. The answer to that is essentially that the jury must carefully analyze the evidence and determine what inferences can and should be drawn, not merely from each separate piece of evidence, but from the whole complex of inter-related information which has been presented in evidence and which you have accepted." Returning to the jury room to consider the issue of appellant's knowledge in light of the "whole complex of inter-related information" that had been presented in evidence, the jury was not long in delivering a guilty verdict against the appellant. It would seem clear that the jury had essentially inquired whether the evidence respecting Gonzalez's offenses of March 23rd—offenses in which appellant had not participated—might be considered on the evidently pivotal question of what the appellant knew on the 24th. Having been told by the court, in effect, that the evidence relevant to the misjoined counts could be considered, the jury had little difficulty reaching its decision. The unacceptable possibility of

appellant's conviction on the basis of evidence of crimes having no legally cognizable relevance to the crime with which he had been charged, already great as a consequence of the misjoinder, was magnified to virtual certainty by the court's supplemental charge.

The People argue that the misjoinder was harmless because evidence of Gonzalez's activities on the 23rd might have been admitted in evidence even if the indictment had been properly drawn. In this regard they point out that evidence of Gonzalez's activities on the 23rd might have been received as an exception to the prohibition against evidence of uncharged offenses since the evidence would have been relevant to rebut Gonzalez's claim that he acted innocently *(cf., People v Alvino,* 71 NY2d 233, 241-247). However, assuming for the purposes of argument only that this is true, the evidence as to Gonzalez's conduct on the 23rd would have been relevant only to establishing Gonzalez's culpability on the 24th; it would have had no legally cognizable bearing upon the culpability of Castro-Restrepo and it would be expected that, if such evidence was to be received against Gonzalez, the jury would have been carefully instructed that the evidence had no probative significance vis-à-vis Castro-Restrepo, and that, even against Gonzalez, it was relevant only to establish a guilty state of mind and not as evidence of a propensity to traffic in narcotics.

As we reverse appellant's conviction for the aforestated reasons, it is not necessary to address appellant's remaining contentions. We do note, however, that appellant raises serious questions on appeal as to the adequacy of his representation at trial. While we do not think it appropriate on this record to address appellant's contentions in this regard *(see, People v Love,* 57 NY2d 998, 1000; *People v Jones,* 55 NY2d 771, 773) and there is, in any event, no need to do so as a predicate to reversal, it is appropriate to note that regardless of what conclusion might be drawn as to the over-all quality of appellant's trial representation, his counsel's motion to suppress the cocaine seized on the 24th as the product of an illegal search was manifestly inadequate, particularly under circumstances in which a meritorious motion might well have been made. The affirmation supporting the motion stated in its entirety:

"Upon information and belief, property, to wit: cocaine was seized from the defendant in violation of his constitutional and statutory rights by law enforcement officials.

"Said evidence is to be introduced into evidence at trial by the People.

"Defendant while not under arrest was indicted. Police seized property from the defendant while so infirmed.

"Counsel requests suppression of said evidence."

We believe that, on remand, appellant should be afforded an opportunity to renew his motion so as to assure that the suppression issue, which may well be crucial to the appellant, is competently litigated. Concur—Murphy, P. J., Ross, Milonas, Kassal and Wallach, JJ.