*238 OPINION OF THE COURT
James A. Yates, J.
Joann Rivera is charged with one count of criminal possession of a controlled substance in the first degree as a result of her acceptance of a delivery by an undercover postal inspector of a sealed package containing a wedding album within which was secreted over three pounds of cocaine. The defendant, a 37-year-old married mother of four, accepted delivery of the package from the undercover postal inspector while she was sitting on the front steps of her home with her husband and four children. She was immediately placed under arrest with the unopened package on her lap. Prior to this incident she had never come into contact with the criminal justice system, and there is no evidence that she was ever the subject of an investigation by any law enforcement agency.
Ms. Rivera has moved to dismiss the indictment pursuant to CPL 210.20 (1) (c) and 210.35 (5). Specifically, she contends that the Assistant District Attorney’s instruction to the Grand Jury that it could infer that she had "actual knowledge” that the package contained cocaine from the fact that she physically possessed it was so incomplete and misleading that it "impaired the integrity of that body’s deliberations and thereby rendered the indictment * * * 'defective’ within the meaning of CPL 210.20 [(1) (c)].” (People v Calbud, Inc., 49 NY2d 389, 392 [1980].)
After hearing oral argument and upon consideration of submitted memoranda and inspection of the Grand Jury minutes, defendant’s motion to dismiss the indictment is granted, with leave to the People to re-present.
THE PRESENTATION
Postal Inspector Roy Priolo of the United States Postal Inspector’s Service testified that while he was on duty at his office on April 7, 1993 he received a package from United States Customs in Miami which was addressed to the defendant at her home. The return address on the package indicated that it was from Panama and had been sent by an individual by the name of "E. Perez.”
Postal Inspector Priolo opened the package, which contained a wedding album. Concealed within the sleeve of the album were two plastic bags of cocaine weighing approximately 3 pounds 14 ounces. After testing the substance concealed within the wedding album to confirm that it was indeed *239 cocaine, he resealed it and set up a "controlled delivery” of the package to Ms. Rivera. In accordance with this plan, he arranged for a "Notice of Delivery” to be delivered to Ms. Rivera’s residence at 477 Irving Avenue in Kings County on April 8, 1993.
At noon on April 9, 1993, Inspector Priolo, working in his capacity as an undercover postal inspector, arrived at Ms. Rivera’s residence with the package. He was dressed as a letter carrier and was driving a United States Postal Service truck. After parking in front of her building, he exited the vehicle and observed a male and a female sitting on the stoop with "children running around.”
The male, who was later determined to be the defendant’s husband, asked Inspector Priolo, "Is that the package from Panama?”[1] Inspector Priolo then asked the female if she was Joann Rivera, to which she replied, "Yes, that’s my package. I called, and went to the post office yesterday looking for the package.” She had done so, apparently, in response to the notice of delivery which she had received the day before. Inspector Priolo then stated, "You’re sitting outside, I don’t know who you are. You have to show me something.” Ms. Rivera then handed Inspector Priolo the "Notice of Delivery” slip as well as a New York State nondriver’s identification card which bore her name, address and phone number. He then handed her the package, and she signed for it and said, "Thank you”.
Inspector Priolo then went back to his truck and communicated with Detective Michael Ward of the Brooklyn South Narcotics District. Detective Ward, who was in plain clothes and had accompanied Inspector Priolo to the scene with his backup team, placed Ms. Rivera under arrest while she was sitting on the front steps of her building. At the time of her arrest the unopened package containing the wedding album and cocaine was on her lap.
In her testimony before the Grand Jury, Ms. Rivera denied knowing that the package contained cocaine. She explained that she had been approached outside of the PTA room at her daughter Kathleen’s school by a woman named Jackie Rodriguez. Ms. Rodriguez is the mother of Kathleen’s playmate Maria, whom she has known for several years since their daughters were in kindergarten.
*240 According to Ms. Rivera, Ms. Rodriguez, who knows Ms. Rivera is home every day, asked her if she could receive a package for her. Ms. Rodriguez told Ms. Rivera that the package would contain a portrait of her mother, and explained that she could not have the package sent to her home because she was in the process of moving to the Bronx. She further stated that she did not want it sent to her home because it was to be a surprise birthday present for her mother.
Ms. Rivera testified that she agreed to do the favor Ms. Rodriguez asked of her. She stated that although she did not know Ms. Rodriguez’ phone number or exact address, she and Ms. Rodriguez had agreed that when Ms. Rivera received the package she would call Ms. Rodriguez’ future sister-in-law Lisa, who works at the pharmacy where Ms. Rivera purchases her husband’s heart medication. Lisa would then advise Ms. Rodriguez that the package had arrived.
According to Ms. Rivera, Ms. Rodriguez never told her where the package was coming from. Although Ms. Rivera acknowledged, when being questioned by the Assistant District Attorney after making her initial statement to the Grand Jury, that she had never accepted a package for a friend prior to this occasion and that she and Ms. Rodriguez did not socialize, she further stated “I didn’t feel there was anything wrong. Around where I live at people generally do people — for other people. Most of the people by my house I go to the store, I babysit their kids, I take them to the park, bring them to school when they need somebody to take them to school. I didn’t feel this was anything wrong.” She further stated that she and Ms. Rodriguez had agreed that the package was to be addressed to Ms. Rodriguez “in care of’ Ms. Rivera, although this was not done. Defendant also stated that she first spoke with Ms. Rodriguez about accepting the package for her “the week before Easter Sunday — before Good Friday”, which fell on April llfh and April 9th respectively.
Ms. Rivera’s account of the delivery of the package and her arrest is consistent with that of the People’s witness, with one minor discrepancy. While Inspector Priolo testified that Mr. Rivera asked him, in Ms. Rivera’s presence, whether the package was from Panama, Ms. Rivera denies that this occurred.
THE INSTRUCTIONS
During deliberations on Ms. Rivera’s case, the Assistant District Attorney presenting this case noted that "[a] member *241 of the grand jury would also like for me to instruct you on possession as it pertains to criminal possession of a controlled substance in the first degree in this matter.” He responded by stating, "[a]nd I will now quote from the People versus Reisman * * * which is dated November 7, 1991 [sic] a section of that specific pages 348 and 349 state as follows: 'The crime of possessing dangerous drugs requires a physical or constructive possession with actual knowledge of the nature of the possessed substance. Knowledge, of course, may be shown circumstantially by conduct or directly by admission or indirectly by contradictory statements from which guilt may be inferred. Generally, possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises. This, of course, is an elemental inference based on common experience and all but universal probabilities. Thus, it is an ancient rule of inference or rebuttal presumption of fact that the recent and exclusive possession of the fruits of any crime warrants the inference of guilt, including, when material, knowledgeable possession.’ ”
CONCLUSIONS OF LAW
Since the defendant was arrested almost immediately upon delivery of the unopened package, evidence, if any, of her knowing possession of cocaine within the package is entirely circumstantial. At the Grand Jury, she denied knowing that the package contained cocaine. In response to the Grand Jury’s request for clarification regarding the meaning of "possession” as applied to this case, the Assistant District Attorney, quoting from People v Reisman (29 NY2d 278, 285 [1971]), advised it that "actual knowledge of the nature of the possessed substance” may be inferred from physical possession. While he instructed the Grand Jury that this inference was "rebuttable,” he failed to explain the standard to be applied when determining whether the presumption had been rebutted. This was error.
In the Grand Jury and in argument before this court the Assistant confused two distinctly separate concepts. There is an important difference between a fact finder’s ability to either draw or reject an inference and the weight of evidence needed to overcome an inference. In the first instance, the issue is whether a presumption of inference is "conclusive”, *242 "mandatory” or "permissive”. As a matter of due process, inferences in criminal cases are, generally speaking, permissive. (Sandstrom v Montana, 442 US 510 [1979].) Thus, the Assistant correctly charged the Grand Jury in this regard by telling it that the inference was permissive and rebuttable. However, an instruction explaining the weight of evidence needed to overcome the inference was critical to the issues in this case and required in light of the Grand Jury’s expressed concerns.
In People v Acosta (174 AD2d 181, 185 [1st Dept 1992], lv denied 79 NY2d 1045 [1992]), the Appellate Division, First Department, in explaining the inference of knowledgeable possession stated that "the strength of the inference is not something which can be assessed in the abstract; it will depend upon the particular circumstances in which the inference is to be drawn [citation omitted]. The inference of knowledge from the fact of possession, after all, rests on nothing more than the common, and it would seem frequently justified, perception that those who come into the possession of contraband most probably know the nature of what they possess [citation omitted]. Where, however, there are circumstances which make it less probable that the possession is knowing, the inference will be deprived of much, if not all, of its force. And, even an inference which may initially seem compelling is subject to rebuttal” (citation omitted).[2]
After noting that the Court of Appeals in Reisman had observed that the " 'probabilities justifying the inference of knowledge in [that] case [were] unusually impressive’ ” (People v Acosta, supra, at 185, quoting People v Reisman, supra, at 287), the Appellate Division went on to state that "the defendant’s 'burden of going forward and negativing the inference [of knowledge from the fact of possession] is a slight one.’ ” (Supra, at 186, quoting People v Kirkpatrick, 32 NY2d *243 17, 23-24 [1973] [emphasis added].) Indeed, the inference is fatally impaired when the defendant provides "some plausible evidentially grounded explanation as to how [she] innocently came into possession of the contraband.” (People v Acosta, supra, at 186, citing People v Kirkpatrick, supra, at 25.)[3]
By merely telling the Grand Jury that the inference was rebuttable, the Assistant not only failed to instruct it on a necessary point, but also almost certainly created confusion. To an uninstructed layperson, the common understanding of the term "rebuttable” implies a balancing of two competing inferences, with the defendant bearing the burden of overcoming the inference of guilt by a preponderance of evidence. This likely interpretation is not an accurate statement of the law regarding the inference of knowledgeable possession.[4] Reisman (29 NY2d 278, supra) authorizes, at most, a permissive inference which may flow logically, reasonably and naturally from all the facts in the case. And, as Acosta (supra) teaches, the inference of knowledge from possession may shift the burden of production but not the burden of persuasion. In classic terminology, the inference is a "Thayer presumption”, since it provides a basis for an inference of guilt but disappears upon introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact.[5] It is not a "Morgan *244 presumption” which would require a fact finder to determine that contrary evidence outweighs evidence of knowing possession. (See, e.g., Thayer, A Preliminary Treatise on Evidence, at 337 [1898]; Morgan, Basic Problems of Evidence, at 31-44 [1962]; Morgan, Instructing the Jury Upon Presumptions and Burden of Proof, 47 Harv L Rev 59, 82-83 [1933].)[6]
Once the Assistant advised the Grand Jury that the law permits a rebuttable inference of knowledge from mere possession, he was required, in the particular circumstances of this case, to have given it the other, necessary, half of the instruction, i.e., that all that is needed to negative the inference is "some plausible evidentially grounded explanation as to how the defendant innocently came into possession of the contraband.” (People v Acosta, supra, at 186.) As previously noted, the burden upon the defendant to overcome the inference is "slight.” (Supra.) Thus, the incomplete and misleading instruction, which was given in response to a "request from [the Grand Jury] for clarification or amplification of the meaning” of the element of possession (People v Calbud, Inc., 49 NY2d 389, 395, n 2, supra), rendered the indictment "defective” in that it failed to provide that body with "enough information to enable it intelligently to decide whether a crime [had] been committed and to determine whether there exist[ed] legally sufficient evidence to establish the material elements of the crime.” (People v Calbud, Inc., supra, at 394-395; see also, CPL 190.25 [6]; 210.20 [1] [c]; 210.35 [5].)
CPL 190.25 (6) provides that "[where] necessary or appropriate * * * the district attorney * * * must instruct the grand jury concerning the law with respect to its duties or any *245 matter before it” (emphasis added). (See also, People v Calbud, Inc., supra, at 394.) In performing this obligation, it is well established that the District Attorney need not instruct the Grand Jury "with the same degree of precision that is required when a petit jury is instructed on the law.” (People v Calbud, Inc., supra, at 394.) Ordinarily, "reading to the Grand Jury from the appropriate sections of the Penal Law” is sufficient. (Supra, at 395, n 1.) However, as the Court of Appeals cautioned in Calbud, under certain circumstances merely reciting verbatim from the Penal Law will not constitute adequate legal instruction. (See also, People v Williams, 136 AD2d 132 [2d Dept 1988].)
In Calbud (supra), the defendants were charged with obscenity. When instructing the Grand Jury, the District Attorney recited the statutory definition of the crime "virtually verbatim”, but failed to instruct that body, in accordance with case law, that the phrase "contemporary community standards” was to be measured by a State-wide, rather than a local, standard. (Supra, at 393.)
While acknowledging that the instructions were incomplete, the Court found the omission was not "so significant in the context of the Grand Jury’s deliberations as to prejudice the interests of the defendants and render the indictments legally defective.” (People v Calbud, Inc., supra, at 395.) The Court was careful, however, to note that it "recognize[d] that there may be situations in which the instructions to the Grand Jury are so misleading that the indictment could not be permitted to stand even though it is supported by legally sufficient evidence.” (Supra.) To illustrate this point, it stated that it might have reached a different result if the District Attorney had provided the Grand Jury "with erroneous and misleading instructions in response to a request from that body for clarification or amplification of the meaning of the phrase 'contemporary community standards.’ ” (Supra, at 395, n 2 [emphasis added].)
What occurred in the instant case was exactly the sort of situation of which the Calbud Court spoke. Here, the Assistant District Attorney, "in response to a request from [the Grand Jury] for clarification” of the element of possession, provided an inaccurate and misleading instruction on this vital point. (People v Calbud, Inc., supra.) The Assistant’s failure to advise the Grand Jury as to how the inference of knowing possession from physical possession is defeated was, in the particular and unusual facts of this case, "so significant *246 in the context of the Grand Jury’s deliberations as to prejudice the interests of the defendant [ ] and render the indictment [ ] legally defective.” (Supra, at 395.)
The Assistant’s recitation of the passage from Reisman (supra) was " 'a good [example] of the problem of words taken out of decisional context * * * which in turn would throw out of focus the instructions designed to guide the jury.’ ” (People v Baskerville, 60 NY2d 374, 382 [1983], quoting Stryzinski v Arnold, 285 App Div 780, 783 [1955].) The passage which was read to the Grand Jury would not, without further instruction as to just how easily the inference of knowledge from the fact of possession is defeated, have enabled that body "intelligently to decide whether a crime [had] been committed and to determine whether there exist[ed] legally sufficient evidence to establish the material elements of the crime.” (People v Calbud, Inc., supra, at 394-395.)
Joann Rivera testified before the Grand Jury and offered an explanation as to how she innocently came into possession of the cocaine. In order for that body to intelligently decide whether to apply the inference of knowledge from physical possession to the facts of the instant case, it should have been instructed that it was not permitted to apply the inference if it found Ms. Rivera’s explanation "plausible.” (People v Acosta, supra.)
That is not to say that it is necessary for the People to instruct the Grand Jury regarding the force of an explanation offered to defeat the inference of knowledgeable possession in every case in which it is relied upon. By way of analogy, in People v Rohena (186 AD2d 509 [1st Dept 1992]), the defendant, who was charged with burglary, argued on appeal that the People, while relying entirely on evidence of possession of the fruits of a burglary, failed to instruct the Grand Jury that exclusive possession of such fruits, if unexplained or falsely explained, justified the inference that the possessor was the burglar. The Appellate .Division, First Department, held that there was no requirement that the Grand Jury be given such an instruction, particularly in light of the fact that that body "was instructed as to the general principles concerning the drawing of circumstantial inferences.” (Supra, at 511.)
However, the result in Rohena (supra) would surely have been different had the District Attorney, either sua sponte or in response to a request for clarification from the Grand Jury, instructed that body that the recent and exclusive possession *247 of the fruits of a burglary justified the inference that the possessor was the criminal, without also advising it that the inference was valid only so long as it found that the defendant’s recent and exclusive possession was "unexplained or falsely explained.” (People v Baskerville, supra, at 382.) For in such a situation, the failure to provide an instruction which included the "unexplained or falsely explained” proviso would hamper the Grand Jury’s ability "intelligently to decide whether a crime has been committed” (People v Calbud, Inc., supra, at 394) — particularly where the defendant provides an "explanation.” In much the same way that an instruction regarding the "recent and exclusive possession of the fruits of a crime” must advise a Grand Jury that the inference is applicable only where such possession is "unexplained or falsely explained”, so too must an instruction regarding the inference of guilty knowledge from possession contain the proviso that the inference may only be applied where the defendant has not provided a "plausible” explanation for her possession.
Thus, once a Grand Jury is presented with a partial explanation of a point of law material to a particular case, it must be given enough information to enable it to intelligently decide how to apply it. (See, People v Calbud, Inc., supra.) Therefore, the Assistant’s failure to advise the Grand Jury in the instant case that the inference of knowledgeable possession may not be applied where a defendant proffers a "plausible” explanation rendered the indictment "defective” within the meaning of CPL 210.20 (1) (c). Accordingly, defendant’s motion to dismiss the indictment is granted.
[Portions of opinion omitted for purposes of publication.]

. Inspector Priolo testified that although the notice of delivery has a space to indicate the place of origin, he did not know if this space had been filled in by a postal employee on the form that was delivered to Ms. Rivera.

. The defendant in Acosta (supra) was a livery cab driver who delivered a closed nylon bag containing three, one kilogram bricks of cocaine to a bar. He remained in the bar while the individuals to whom he had delivered the cocaine engaged in a sale on the premises. In reversing the defendant’s conviction for criminal possession of a controlled substance in the first degree on the law, the Court noted that there was no direct proof that the defendant knew what was in the nylon bag, since it was closed and "there [was] no evidence indicating that he looked inside the bag or that the bag’s contents were discussed in his presence.” (People v Acosta, supra, at 183.) The Court concluded that the inference of guilty possession was not "warranted by the underlying probabilities”, and stated that the "case ought not to have been put to the jury.” (Supra, at 185-186.)

. (Compare, People v Lemmons, 40 NY2d 505, 510 [1976] [statutory presumption regarding presumption of possession of firearm in private automobile remains in the case even if contrary proof is offered and may only be "nullified if the contrary evidence is strong enough to make the presumption incredible”] [emphasis added].) In Lemmons, however, the issue was whether the presumption was inapplicable as a matter of law and should therefore never have been charged to the jury. That is a distinctly separate inquiry from the question of the weight of the evidence necessary to negative an inference in the judgment of the fact finder. (Cf., People v Martinez, 83 NY2d 26, 34, n 3 [1993].)

. The People urge that the passage from Reisman (supra) which was read to the Grand Jury constituted proper instruction, since it states that "the presumption is a rebuttable one, that guilt may be inferred, and that the inference is permissible.” During oral argument, the Assistant District Attorney conceded that the instruction may have been interpreted by the Grand Jury as indicating that the defendant’s burden of negativing the inference was to be measured by a preponderance of the evidence standard, thereby shifting the burden of proof to the defendant. He further argued that an instruction which shifts the burden of persuasion may be a correct one. If the Assistant, as legal advisor to the Grand Jury, understands his instructions to mean that the inference shifts the burden of proof, then clearly the Grand Jury is likely to have reached the same erroneous conclusion.

. The United States Supreme Court described the operation of such a *244 presumption in a civil context in Texas Dept. of Community Affairs v Burdine (450 US 248 [1981]). In Burdine, which involved an employment discrimination suit brought by a former employee, the plaintiff established a prima facie case, which gave rise to an inference of unlawful discrimination on the part of the employer. The Supreme Court explained that the inference of unlawful discrimination is "rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. The Court of Appeals would require the defendant to introduce evidence which, in the absence of any evidence of pretext, would persuade the trier of fact that the employment action was lawful. This exceeds what properly can be demanded to satisfy a burden of production.” (Supra, at 257 [emphasis in original].)

. The Federal Rules of Evidence have adopted the "Thayer” approach in civil cases (Fed Rules Evid rule 301) while eschewing any codification in criminal cases. (120 Cong Rec 11,929-11,930 [1974].)