■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANUEL MARTINEZ, Appellant. [616 NYS2d 491] —Judgment of the Supreme Court, New York County (Thomas B. Galligan, J., at *Mapp* hearing, trial and sentence), rendered July 1, 1991, convicting defendant, after jury trial, of criminal possession of a controlled substance in the first degree and criminally using drug paraphernalia in the second degree, and sentencing him to an indeterminate term of imprisonment of from 15 years to life on the drug possession count concurrent to a definite one-year term on the drug paraphernalia count, unanimously affirmed.

In the fall of 1990, police officers of the Manhattan North Narcotics Division received information from a confidential informant that apartment 5-C, located at 509 West 134th Street in New York County, "was being used to process, store and sell narcotics". According to Detective Burkhalter, the police were told that "dealers would meet the prospective buyers in front of the building, they would have the buyers wait in front of the building and proceed up to 5-C by themselves and * * * [receive] whatever quantity of cocaine that they were going to sell to the buyer from Apartment 5-C and then return downstairs in front of the building and make the exchange." Pursuant to this information, a "no-knock" search warrant was obtained for the subject premises.

On the evening of October 8, 1990, police planned a buy and bust operation to take place in front of the building following which they were to execute a search warrant on the apartment. At approximately 6:20 P.M., Detective McNerney, a member of the backup team, stationed his vehicle on Amsterdam Avenue and 138th Street, in the vicinity of the building. Among other officers with him in the vehicle was Sergeant Murphy, who coordinated the operation. Detectives Kirk Burkhalter and Michael Hernandez were stationed on the roof of the building to detect fleeing suspects and any contraband they might discard.

Sergeant Murphy instructed undercover Detective Teddy Jimenez to proceed to the building to attempt a drug purchase. New York City Police Officer Israel Crespo was assigned to act as his "ghost officer", i.e., to keep Jimenez under observation for his protection. Detective Burkhalter, stationed on the roof, testified that the backup officers advised him by radio, "that the undercover officers were being sent to * * * attempt a buy." He received a second transmission that "the undercover officer, Detective Jimenez was in front of the building in conversation with a male Hispanic [later identified as Daniel Burdie], in a drug related conversation." Detective Burkhalter then received a third radio transmission informing him "that the male Hispanic who Detective Jimenez was in conversation with entered the building and Detective Jimenez remained in front. They said that this looked like an indication that it was going to be a positive buy."

Detective Burkhalter descended the stairs from the roof to a landing above the fifth floor in order to observe the subject apartment. Within a minute, he saw defendant, whom he described as "a male Hispanic * * * roughly five/eight, five/seven, about 170 pounds, he was wearing a blue baseball cap

and an orange shirt and he had medium length hair. His skin tone was fairly dark." The detective watched defendant approach apartment 5-C, "remove[ ] a key from his pocket, unlock the door and enter the apartment. I then saw him exit the apartment and lock the door about three minutes after he entered it and proceed downstairs." Detective Burkhalter then returned to the roof and transmitted this information to Sergeant Murphy. When, a short time later, Detective Burkhalter received a description of Daniel Burdie, the individual dealing with Detective Jimenez, he realized that there were two suspects and so advised the backup team.

When Detective Jimenez returned to his car and notified the backup team that he had made a positive buy at the building, Sergeant Murphy ordered the search warrant to be executed on the apartment. Entrance to the apartment was gained by use of a hydraulic ram. Detective McNerney, the arresting officer, searched the apartment, which was unoccupied, and found an open, grey tool box in the rear bedroom. The tool box contained six clear bags of a white powdery substance, including four bags of cocaine. Also found in the apartment were two triple-beam scales, $200 in United States currency, aluminum foil, boxes of Glad Bags, smaller bags and various plastic bags filled with cocaine, one of which was secreted in a hole cut in the floor, six in a dresser drawer and four in the dishwasher.

Meanwhile, Detective Burkhalter walked down from the roof to the street. Upon reaching the front of the building, he saw several persons in police custody, including defendant. After searching defendant for weapons and finding none, the detective took defendant up to the subject apartment and informed Detective McNerney that he had seen defendant entering and exiting the premises. Detective McNerney responded that narcotics had been found in the apartment and placed defendant under arrest. A search of defendant's person resulted in the recovery of three keys from his right front pocket. Two of the keys opened the two locks on the apartment door and a third, smaller key opened the lock on the grey tool box.

Daniel Burdie was arrested in the vicinity of the building. He was identified as the seller of the narcotics by Detective Jimenez, who had engaged him in a hand-to-hand transaction.

At trial, defendant Manuel Martinez denied knowing Mr. Burdie, using or selling drugs or ever having been in the apartment prior to his arrest. He denied possession of the

keys to the apartment and to the grey tool box in which some of the drugs were found.

Defendant was indicted on both first and third degree criminal possession counts, in addition to second degree criminal use of drug paraphernalia. He was acquitted of the count charging third degree possession with intent to sell and convicted on the other two charges.

On appeal, defendant argues that the evidence is insufficient to establish that he knowingly possessed the contraband found in the apartment, that the prosecution withheld exculpatory evidence from the defense, that his due process rights were prejudiced by an ex parte communication between the prosecutor and the court and that the police lacked probable cause to detain and search him. Defendant's contentions are without merit.

Taking these arguments in logical sequence, there was nothing improper about defendant's apprehension and search. Defendant was seen entering premises that were the subject of a valid search warrant, issued on information that the apartment was being used to deal in narcotics. Moreover, he was observed entering the apartment at a time when a narcotics transaction was in progress. As Detective Burkhalter testified, defendant entered the premises after a radio transmission was received informing the detective that a suspect in the transaction (Daniel Burdie) was approaching the building, and defendant left the apartment before that suspect returned to the street to complete the transaction with the undercover detective. Defendant was apprehended based upon Detective Burkhalter's description, which the detective confirmed shortly thereafter in the apartment, prior to the search of defendant's person and recovery of the keys to the apartment and tool box.

The interval during which defendant was observed in the premises subject to the search warrant and its timing in relation to the transaction going on in the street present circumstances which strongly suggest that a crime was being committed so as to justify defendant's detention (People v De Bour, 40 NY2d 210, 223). That defendant was subsequently acquitted of charges arising out of his role in the drug transaction is of no moment because probable cause requires "merely information sufficient to support a reasonable belief that an offense has been or is being committed or that evidence of a crime may be found in a certain place" (People v Bigelow, 66 NY2d 417, 423). The forcible stop of defendant is

not rendered improper because a jury subsequently determined that the evidence was insufficient to establish defendant's complicity in the transaction with the undercover officer beyond a reasonable doubt.

It follows that defendant's proximity to the contraband, taken together with his possession of keys to the premises and to a tool box in which contraband was found, constitutes sufficient proof of his guilt of the counts of criminal possession of a controlled substance in the first degree and criminally using drug paraphernalia in the second degree *(People v Bleakley,* 69 NY2d 490). The location of narcotics on premises subject to defendant's control raises the inference of his possession and control of the contraband *(People v Reisman,* 29 NY2d 278, 286-287, *cert denied* 405 US 1041, quoting *People v Nettles,* 23 Ill 2d 306, 308, 178 NE2d 361, 363). Likewise, possession of the keys evinces possession of the narcotics to which the keys give access *(People v Rowell,* 163 AD2d 833, 834, *lv denied* 76 NY2d 896). Finally, upon an independent review of the facts, there is no support for a finding that the verdict is against the weight of the evidence *(supra).*

Defendant's main contention on this appeal involves the withholding of evidence claimed to be "exculpatory" and an asserted infringement on his right to due process by the manner in which the prosecutor sought a ruling as to its disclosure. Defendant asserts that reversal of his conviction is required because, prior to Detective Jimenez taking the stand, the prosecutor engaged in an ex parte discussion with the court. The prosecutor sought a ruling as to whether he must disclose that the witness was under investigation in connection with the purchase of a stolen vehicle and had therefore been reassigned to a desk job in an administrative capacity. After considering the matter, Criminal Term ruled, in another ex parte conference, that the information need not be disclosed to the defense. However, the court further ruled that defense counsel, on cross-examination, would not be precluded from inquiring into the witness's present duties. Nor would the scope of questioning into the circumstances surrounding Detective Jimenez's reassignment be restricted in any way.

It was error for the court to engage in ex parte communication with the prosecutor and to permit the prosecutor to conceal from the defense the fact that Detective Jimenez was the subject of a criminal investigation. In view of the overwhelming evidence against defendant, however, each of these errors was harmless since we find, beyond a reasonable doubt, that they would not have affected the outcome *(Brady v*

*Maryland,* 373 US 83). Defendant was identified, not by Detective Jimenez, but by Detective Burkhalter. His conviction is supported by the physical evidence obtained by search warrant, the testimony of Detective Burkhalter linking defendant to the contraband and by the keys recovered from defendant's person during the course of a search conducted upon reasonable suspicion that a crime was being or had been committed.

Detective Jimenez's testimony is only relevant insofar as establishing the connection between defendant's possession of the narcotics and the transaction engaged in by Detective Jimenez with Daniel Burdie. This testimony is corroborated by that given by Officer Crespo, who observed the transaction, Detective McNerney, the arresting officer, and Sergeant Murphy, who coordinated the operation. Therefore, it is eminently reasonable to presume that if the prosecutor had received an unfavorable ruling from Criminal Term on disclosure of Detective Jimenez's reassignment, the People would have elected to proceed without the testimony of this witness.

The withheld information, further, was not material to the counts for which the jury returned a guilty verdict. With respect to these charges, the testimony of Detective Jimenez was merely contextual, explaining the presence of the police at the apartment. Thus, any new trial which might have been directed, had the error not been found harmless, would be limited to the count charging third degree possession with intent to sell *(People v Vilardi,* 76 NY2d 67, 71). Since defendant was acquitted of this charge, there is nothing to be retried. Concur—Rosenberger, J. P., Ellerin, Kupferman, Ross and Rubin, JJ.